UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAMES TUMINELLO and UBS
FINANCIAL SERVICES, INC.,

Plaintiffs,

v.

BRIAN RICHARDS and BRICH
HOLDINGS LLC, a Nevis limited
liability company,

Defendants.

CASE NO. C11-5928BHS

ORDER GRANTING
DEFENDANT BRIAN
RICHARDS'S MOTION TO
COMPEL ARBITRATION AND
STAY PROCEEDINGS; AND
DENYING PLAINTIFFS'
MOTION FOR PRELIMINARY
INJUNCTION

This matter comes before the Court on Defendant Brian Richards's ("Richards")

Motion to Compel Arbitration and Stay Proceedings (Dkt. 13) and Plaintiffs [Cross-]

Motion for Preliminary Injunction (Dkt. 14). The Court has considered the pleadings

filed in support of, and in opposition to, the motions and the remainder of the file. For

the reasons stated herein, the Court hereby grants Richards's motion to compel arbitration

and stay proceedings and denies Plaintiffs' motion for preliminary injunction.

## I. PROCEDURAL HISTORY

Plaintiffs filed this action on November 11, 2011. Dkt. 1. On December 23, 2011,

Richards filed the instant motion to compel arbitration and stay court proceedings. Dkt.

1   13.  On January 17, 2012, Plaintiffs responded.  Dkt. 30.  On January 25, 2012, Richards

2   replied.  Dkt. 35.

3          On December 29, 2011, Plaintiffs filed a cross-motion for preliminary injunction.

4   Dkt. 14.  On January 17, 2012, Defendants responded.  Dkt. 28.  On January 25, 2012,

5   Plaintiffs replied.  Dkt. 40.

6                              **II. FACTUAL BACKGROUND**

7          This action arises out of a Statement of Claim ("SOC") that Richards filed in

8   August 2011 with the Financial Industry Regulatory Authority ("FINRA"), against UBS

9   Financial Services, Inc. ("UBSFS"), a FINRA member broker-dealer, and James

10  Tuminello, a UBSFS registered representative.  Dkt. 1-1 at 2.  In the SOC, Richards

11  alleges that, on or about September 8, 2005, he set up an investment account with UBSFS

12  after Tuminello assured him that he would maximize Richards's profits.  *Id*. at 5; Dkt. 13

13  at 4.  Richards had then-recently obtained settlement funds from a lawsuit concerning his

14  family's business, and he "wanted to invest the settlement proceeds for growth and to

15  provide income to live on until he could generate income from a future business . . . ."

16  Dkt. 1-1 at 4.  Richards remained a customer of UBSFS until about September 2009.

17  Dkt. 13 at 4.  While he was a customer, Richards claims that he lost an estimated

18  $2,200,000 because of UBSFS and Tuminello's mismanagement of funds.  Dkt. 1-1 at 5-

19  7.  Richards has charged UBSFS and Tuminello with fraud, negligence, breach of

20  contract, breach of fiduciary duty, violations of state and federal securities laws, and

21  violations of the Washington Consumer Protection Act.  *Id*. at 3, 7-8.

22

1    After Richards submitted his claim to FINRA arbitration, UBSFS and Tuminello

2  filed this action seeking declaratory relief and preliminary and permanent injunctive

3  relief to enjoin Richards from pursuing his claims in arbitration.  Dkt. 1.  The gist of the

4  instant complaint is that Richards initiated FINRA arbitration in connection with

5  investment accounts in Switzerland owned not by him, but by Brich Holdings LLC

6  ("Brich"), an offshore limited liability company that Richards created under the laws of

7  the Caribbean island nation of Nevis.  Dkt. 1 at 3; Dkt. 1-1 at 15-16; Dkt. 14 at 3.

8  Plaintiffs argue that, in creating this separate entity, Richards, in his capacity as manager

9  of Brich, signed account agreements with UBS Swiss Financial Advisers AG

10  ("UBSSFA") to establish certain Swiss investment accounts, and that it is these accounts

11  that sustained the losses alleged in the SOC.  Plaintiffs contend that the Brich-UBSSFA

12  account agreement(s) contains no arbitration provision and, instead, contains the

13  following Swiss forum and choice of law clause:

14  **Applicable law and Place of Jurisdiction**
          The present Agreement and/or Declaration shall be <u>exclusively</u>
15   <u>governed by and construed in accordance with Swiss law</u>.  The place of
     performance of all obligations of both parties, the place of debt collection,
16   the latter only for clients domiciled outside Switzerland, as well as the
     <u>exclusive place of jurisdiction</u> for any disputes arising out of and in
17   connection with the present Agreement and/or Declaration shall be <u>Zurich,</u>
     <u>Switzerland</u>.

18  Dkt. 15-1 at 8 (emphasis in original); *see also* Dkt. 1 at 3; Dkt. 14 at 3.  Plaintiffs argue

19  that because the SOC alleges losses in the Swiss investment accounts owned by Brich

20  (and not Richards), any dispute relating to these accounts are subject to exclusive

21  jurisdiction in Switzerland.  *Id.*

22

In the motion to compel arbitration and opposition to Plaintiffs' motion for preliminary injunction, Richards and Brich (collectively, the "Defendants") argue that, at the onset of the relationship, Richards and UBSFS entered into a Master Account Agreement, which contains a broad and valid arbitration clause.  The last paragraph of the Master Account Agreement reads:

> You agree, and by carrying an account for you UBS Financial Services Inc. agrees, that **any and all controversies which may arise between you and UBS Financial Services Inc.** concerning **any account(s), transaction, dispute or the construction, performance, or breach of this or any other Agreement**, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration.  Any arbitration under this Agreement shall be held under and pursuant to and be governed by the Federal Arbitration Act, and shall be conducted before an arbitration panel convened by the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc.

Dkt. 13 at 5 (emphasis in original).  In addition, Defendants note that Richards's account application that he submitted to UBSFS discusses arbitration of claims.  The signature page of that application reads:

> B.    that in accordance with the last paragraph of the Master Account Agreement entitled Arbitration" [sic] I am **agreeing in advance to arbitrate any controversies which may arise with among others UBS Financial Services** in accordance with the terms outlined therein.

*Id*.  (emphasis added).  Defendants argue that these arbitration provisions govern the allegations raised in the SOC. *See* Dkts. 13, 28.

### III. DISCUSSION

**A.    The Federal Arbitration Act**

The Federal Arbitration Act ("FAA") provides that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or

1  refusal shall be valid, irrevocable, and enforceable, save upon such grounds as exist at

2  law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The purpose of the

3  FAA is to "reverse the longstanding judicial hostility to arbitration agreements . . . and to

4  place arbitration agreements upon the same footing as other contracts."  *Gilmer v.*

5  *Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).  To that end, the FAA divests

6  courts of their discretion and requires courts to resolve any doubts in favor of compelling

7  arbitration.  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985).  The FAA requires

8  courts to stay proceedings when an issue before the court can be referred to arbitration.  9

9  U.S.C. § 3.  On review of a motion to compel arbitration, the court's role is limited to a

10 determination of (1) whether the parties entered into a valid agreement to arbitrate, and if

11 so, (2) whether the present claims fall within the scope of that agreement.  *Chiron Corp.*

12 *v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

13 **B.     Valid Arbitration Clause**

14         Plaintiffs do not dispute that there is a valid arbitration provision in the Master

15 Account Agreement and that the provision purportedly governs any dispute between

16 Richards and UBSFS.  Instead, Plaintiffs contend that "[t]here is no arbitration agreement

17 . . . between the real party in interest, Brich, and Plaintiffs . . . ," specifically with respect

18 to the Swiss investment accounts that Plaintiffs claim were subject to the losses alleged in

19 Richards's FINRA claim.  Dkt. 30 at 1.  Therefore, Plaintiffs contend that any dispute

20 concerning the Swiss investment accounts is subject not to FINRA arbitration, but to

21 exclusive jurisdiction in Switzerland.  *See* Dkt. 14; Dkt. 30.

22

1     The Court disagrees.  A district court's role is "strictly limited to determining

2  arbitrability and enforcing agreements to arbitrate," and to "leave[] the merits of the

3  claim and any defenses to the arbitrator."  *Republic of Nicaragua v. Standard Fruit Co.*,

4  937 F.2d 469, 478 (9th Cir. 1991), *cert. denied*, 503 U.S. 919 (1992).  Here, Richards has

5  asserted claims in his personal capacity against UBSFS and Tuminello, and there is no

6  dispute that the Master Account Agreement between UBSFS and Richards contains a

7  valid arbitration clause.  Dkt. 13 at 35.[1]  Accordingly, the Court's inquiry starts and ends

8  with its determination that there exists a valid and enforceable arbitration agreement

9  between the parties named in the SOC, and the Court need not address the secondary

10 question of who is the "real party in interest" in the context of the SOC.  The Court must

11 defer that fact-finding function to the arbitrator.

12 **C.     Real Party in Interest**

13      Nevertheless, even if the Court could rule on the real-party-in-interest question,

14 the Court finds that Plaintiffs have failed on this record to overcome the presumption of

15 arbitrability or otherwise show that injunction is warranted.  *See Green Tree Fin. Corp.-*

16 *Ala. v. Randolph*, 531 U.S. 79, 92 (2000) (the party opposing arbitration bears the burden

17 of showing that the agreement is not enforceable); *Independent Living Center of Southern*

18 *Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 651 (9th Cir. 2009) (party seeking preliminary

19 injunction "must establish that he is likely to succeed on the merits, that he is likely to

20

21      [1] To be sure, even if the arbitration provision was found to be unenforceable for any
reason, the Master Account Agreement provides that any controversies in connection with the
22 agreement would be submitted to the exclusive jurisdiction of the courts of the State of New
York and the federal courts sitting in the Southern District of New York.  Dkt. 13 at 35.

1  suffer irreparable harm in the absence of preliminary relief, that the balance of equities

2  tips in his favor, and that an injunction is in the public interest).

3      In the SOC, Richards alleges in part that UBSFS and Tuminello made unsuitable

4  recommendations to Richards and that UBSFS failed to supervise Tuminello and the

5  accounts.  Dkt. 1-1 at 3.  These allegations are not account-specific, as Plaintiffs' theory

6  assumes, but rather contemplate broad actions (or inactions) by UBSFS and Tuminello

7  that Richards claims contributed to his losses.[2]  Indeed, Richards alleges that one of

8  UBSFS's unsuitable recommendations related to the creation of the offshore limited

9  liability company, Brich.  Dkt. 1-1 at 5.  With that recommendation, Richards alleges that

10  UBSFS directed lawyers to create the offshore limited liability company, along with a

11  family trust, and commanded UBSSFA to manage the funds.  *Id*.; Dkt. 28 at 4.  These

12  recommendations were part of what Richards describes as a master "Tuminello Plan"

13  designed to maximize Richards's profits.  Dkt. 1-1 at 5.  Based on the foregoing, the

14  Court cannot conclude on the current record that Brich is the only party with legitimate

15  grievances against UBSFS and Tuminello.  Plaintiffs fail to define what constitutes "real

16

17

18

19 _____

20      [2] Plaintiffs contend that "the SOC does not ask for damages based on the supposed advice from Tuminello and UBSFS to create offshore entities."  Dkt. 40 at 5-6.  That may be true.  But, again, the arbitrator – and not this Court – needs to determine how that allegation (or lack

21  thereof) impacts Richards's underlying claim and damages.  For present purposes, the Court's role starts and ends with its determination that there exists a valid and enforceable arbitration

22  agreement between Richards and UBSFS.

1   party in interest" or otherwise show why there cannot be more than one interested party,

2   including but not limited to Brich.[3]

3          Moreover, although the Court need not engage in in-depth contract construction at

4   this juncture, the Court finds that the contract language raises at least two significant

5   questions regarding Plaintiffs' real-party-in-interest proposition.  First, the Master

6   Account Agreement contemplates arbitration of controversies related to "*any* account . . .

7   of this *or any other Agreement*, whether entered into prior, on or subsequent to the date

8   hereof."  Dkt. 13 at 35 (emphasis added).  Therefore, even assuming Brich's status as the

9   sole holder of the Swiss accounts and that the losses alleged in the SOC concern only

10  those accounts, the Court questions whether the Swiss forum clause in the Brich-

11  UBSSFA agreement trumps the broad arbitration provision in the Master Account

12  Agreement.  *See Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 23 (2d Cir.

13  1995) (where the clause is broad, an arbitration of even a collateral matter will be ordered

14  if the claim alleged "implicates issues of contract construction or the parties' rights and

15  obligations under it").  Although the Court need not answer this question, the mere

16  existence of the question undermines Plaintiffs' position that Brich is the one and only

17  real party in interest.  Further development of the record would be necessary to resolve

18  this question.

19

20  _____

21          [3] Fed. R. Civ. P. 17(a) provides that only a "real party in interest" may prosecute an
    action.  Significantly, the rule provides that "[t]he following may sue in their own names without
22  joining the person for whose benefit the action is brought: . . . (F) a party with whom or in whose
    name a contract has been made for another's benefit . . . ."  Fed. R. Civ. P. 17(a)(1)(F).

1       Second, in the SOC, Richards has named UBSFS and Tuminello as the

2   respondents, which is coherent with Richards's allegations that he dealt with Tuminello, a

3   registered representative of UBSFS, and that he entered into a Master Account

4   Agreement with UBSFS in his personal capacity.  By contrast, the Swiss forum clause in

5   the Brich agreement that Plaintiffs seek to enforce appears in an agreement that names

6   UBSSFA (and not UBSFS).  Notwithstanding the Court's limited understanding of the

7   actual relationship between UBSFS and UBSSFA, it appears at the outset that UBSFS is

8   seeking to enforce a forum clause in an agreement to which it is not a party.  Whether or

9   not this distinction is significant is not for the Court to decide.  Even so, this concern is

10   relevant to the question of whether Plaintiffs have met their heavy burden to enjoin the

11   pending arbitration and subject the claims thereunder to Swiss jurisdiction.  For the

12   reasons stated, the Court finds that Plaintiffs have not met that burden.[4]

13   **D.      FINRA Rules**

14       Because the Court finds that the arbitration clause in the Master Account

15   Agreement is valid and enforceable, the Court need not reach the alternate issue of

16   whether arbitration is warranted under FINRA rules.

17   ───────────────────

18       [4] With respect to Plaintiffs' motion for preliminary injunction, the Court's analysis relates
    most directly to the first element of whether Plaintiffs have established the likelihood of success

19   on the merits.  For reasons discussed, the Court finds that Plaintiffs have not established that
    element.  But the Court also finds that Plaintiffs have not established that they are likely to suffer

20   irreparable harm in the absence of preliminary relief.  Plaintiffs, who are based out of Seattle,
    Washington, seek to litigate the claims referenced in the SOC in Switzerland rather than locally

21   in a presumably less expensive FINRA arbitration.  The economics cut against a finding of
    irreparable harm, and nothing in the Plaintiffs' briefing compels the Court to conclude otherwise.

22   Likewise, the Court finds that Plaintiffs have failed to establish that the balance of equities tips in
    their favor or that an injunction is in the public interest.

1

**IV. ORDER**

2      Therefore, it is hereby **ORDERED** that Richards's Motion to Compel Arbitration

3  and Stay Proceedings (Dkt. 13) is **GRANTED** and Plaintiffs' [Cross-] Motion for

4  Preliminary Injunction (Dkt. 14) is **DENIED**.

5      Dated this 8th day of March, 2012.

6

7  _____

8                    BENJAMIN H. SETTLE
                   United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22